**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **Christine Elaine Maurer,** | **Case No. 1:25CV413** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| | **Magistrate Judge Reuben J. Sheperd** |
| **Commissioner of Social Security** | |
| **Defendants.** | **MEMORANDUM OPINION AND ORDER** |

This matter is before the Court on the Objection of Plaintiff Christine Elaine Maurer ("Plaintiff" or "Maurer") to the Report and Recommendation of Magistrate Judge Reuben J. Sheperd regarding Plaintiff's request for judicial review of Defendant Commissioner of the Social Security Administration's ("Defendant" or "Commissioner") denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  (Doc. No. 13.)  For the following reasons, Plaintiff's Objection (Doc. No. 13) is overruled, the Report & Recommendation ("R&R") (Doc. No. 12) is adopted as set forth herein, and the Commissioner's decision is affirmed.

I.      **Procedural History**

In October 2022, Maurer filed her application for DIB**,** alleging a disability onset date of April 27, 2022.  (Doc. No. 6 (Transcript ["Tr."] ) at 17.)  The application was denied initially and upon reconsideration, and Murray requested a hearing before an administrative law judge ("ALJ").  (*Id*.)  On April 8, 2024, the ALJ conducted a telephonic hearing at which Maurer was represented by counsel and testified.  (*Id*.)  *See also* Tr. 32-60.  A vocational expert ("VE") also testified.  (*Id*.)  During the hearing, Maurer (through counsel) requested to amend her claim to a closed period of disability from April 28, 2022 to May 5, 2023.  (Tr. 17, 38.)

On April 24, 2024, the ALJ found that Murray was not disabled.  (Tr. 17-27.)  The ALJ determined that Maurer suffered from the severe impairments of bilateral knee osteoarthritis, and right shoulder degenerative joint disease, status post arthroscopy.  (Tr. 20.)  The ALJ found that Maurer's impairments did not meet or medically equal the requirements of a listed impairment and that she retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional exertional limitations:  she could (1) frequently push/pull with the right upper extremity; (2) frequently push/pull with the left lower extremity; (3) occasionally climb ramps/stairs, balance (as defined in the Selected characteristics of Occupations ("SCO")), stoop, kneel, and crouch; (4) never crawl; (5) never climb ladders/ropes/scaffolds; (6) frequently reach with the dominant right upper extremity; (7) have no exposure to unprotected heights, or moving mechanical parts; and (8) not engage in commercial driving.  (Tr. 21.)  The ALJ then concluded that Maurer could perform her past relevant work as a bartender as generally performed in the national economy and could also perform other jobs that exist in significant numbers in the national economy and, therefore, was not disabled.  (Tr. 25-27.)  The Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1-6.)

Plaintiff seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c).  (Doc. No. 1.) The case was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.2(b)(1) for a Report and Recommendation ("R&R").  In the R&R, the Magistrate Judge concludes that the ALJ's decision is supported by substantial evidence and recommends that the decision be affirmed. (Doc. No. 12.)  On December 4, 2025, Plaintiff filed the following Objection to the R&R:

> I.      Whether the [ALJ] complied with the revised regulations when evaluating the persuasiveness of the opinion of Jordyn Hatcher, CNP.

2

(Doc. No. 13.)  The Commissioner filed a Response on December 17, 2025.  (Doc. No. 14.)  The Court has conducted a *de novo* review of the issues raised in Plaintiff's Objections.

## II.    Evidence

### A.    Personal and Vocational Evidence

Maurer was born in January 1972 and was 53 years-old at the time of her administrative hearing (Tr. 26, 54), making her a "person closely approaching advanced age" under Social Security regulations.[1] 20 C.F.R. §§ 404.1563(d).  She has a high school education and is able to communicate in English.  (Tr. 26, 32-54.)  She has past relevant work as a bartender.  (Tr. 25.)

### B.    Relevant Medical Evidence[2]

#### 1.    Right Shoulder MRI and Surgery

On March 23, 2022, Maurer presented for an MRI of her right shoulder.  (Tr. 336.)  This imaging showed: (1) full-thickness retracted supraspinatus and infraspinatus tendon tears; (2) subscapularis and teres minor reactive tendinopathy; (3) interstitial edema and mild fatty infiltration of the infraspinatus muscle; (4) interstitial edema of the supraspinatus and teres minor muscles; (5) severe intra-articular tendinosis of the bicep tendon long head; (6) fraying of the biceps labral anchor; and (7) large glenohumeral joint effusion freely communicated with the subacromial-subdeltoid bursal space.  (Tr. 337).

---

[1] The regulations provide as follows: "Person closely approaching advanced age.  If you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." 20 C.F.R. § 404.1563(d).

[2]  The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence that is necessary to resolution of the instant Objection.  Specifically, and because Maurer's Objection relates principally to the ALJ's rejection of certain limitations relating to her right shoulder, the Court limits its recitation of the medical evidence to that relating to her right shoulder surgery and post-surgical treatment.

Maurer subsequently presented to Kyle L. Randall, M.D. on April 12, 2022 to discuss surgical options.  (Tr. 478.)  Dr. Randall diagnosed tear of right rotator cuff; impingement syndrome of right shoulder; biceps tendonitis on right; and arthritis of right acromioclavicular joint.  (Tr. 479-480.)  Maurer decided to proceed with surgery.  (Tr. 480.)  On May 5, 2022, Dr. Randall performed right shoulder arthroscopic rotator cuff repair, shoulder arthroscopic subacromial decompression/acromioplasty, shoulder arthroscopic biceps tenodesis, shoulder open subpec biceps tenodesis, and shoulder arthroscopic distal clavicle excision.  (Tr. 322.)  Dr. Randall's surgical notes reflect that the Maurer's rotator cuff tear size was "massive."  (Tr. 323.)

### 2.     Occupational Therapy Visits (May 2022 to July 2022)

Maurer presented to Courtney Barnett, OT for eight post-surgical occupational therapy sessions between May 2022 and July 2022.  (Tr. 395-425.)   In her first session on May 9, 2022 (i.e., four days post-surgery), Maurer complained of muscle weakness and shoulder pain.  (Tr. 420.)  She was wearing a sling on her right arm.  (Tr. 421.)  Maurer rated her pain a 4/10 when she was at rest, and a 9/10 when she was active.  (Tr. 420.)  She reported overdoing it while working in her flower bed the previous day and was educated by Ms. Barnett on "protocol and restrictions."  (*Id*.)  On physical examination, Ms. Barnett noted restricted range of motion in Maurer's right shoulder and elbow, as well as impaired strength, endurance, muscle performance, ergonomics and body mechanics, coordination, joint integrity and mobility, and posture.  (Tr. 421, 423.)  Ms. Barnett noted that "these impairments contribute to occupational performance limitations including bathing, leisure integration, shopping/errands, dressing, driving/transportation, grooming, work/school integration, toileting, [and] home management tasks."  (Tr. 423.)

Maurer returned to occupational therapy on May 13, 2022.  (Tr. 417-419.)  She rated her pain a 2/10 and showed some improvement with respect to her shoulder range of  motion.  (*Id.*)  On May 20, 2022, Maurer again rated her pain a 2/10 and continued to show improvement in her shoulder range of motion.  (Tr. 412-414.)  On May 27, 2022, Maurer indicated that she was "very fearful of 'messing up [her] bicep,'" stating that "it definitely hurts and lets me know."  (Tr. 409.)  She reported little pain at her visit, however, rating it a 1/10.  (*Id.*)  Maurer's shoulder range of motion continued to improve with therapy.[3]  (*Id.*)

At a visit on June 10, 2022, Maurer complained of difficulty sleeping while wearing her sling, and reported that she had assisted her husband the previous night with lifting a tent.  (Tr. 406.)  Ms. Barnett provided advice regarding sleeping positions, as well as regarding overuse of her right upper extremity "per current phase of protocol."  (Tr. 408.)  Maurer rated her pain a 2/10 and showed continuing improvement with her range of motion.  (Tr. 406.)

Maurer returned to occupational therapy on June 17, 2022.  (Tr. 401-403.)  She rated her pain a 1/10 and showed improved range of motion, with her right shoulder flexion and abduction range of motion at 180 degrees, external rotation at 90 degrees, and internal rotation at 50 degrees.  (Tr. 401.)  Ms. Barnett found that Maurer had met her current phase of protocol goals.  (Tr. 403.)

---

[3] At her first therapy session on May 9, 2022, Maurer's right shoulder flexion range of motion was 50 degrees, and her external rotation range of motion was 10 degrees. (Tr. 421.) At her fourth therapy session on May 27, 2022, her right shoulder flexion range of motion was 143 degrees (165 degrees at end of session), and her external rotation range of motion was 43 degrees.  (Tr. 409.)  The parties do not direct this Court's attention to any authority or evidence regarding what constitutes a normal range of shoulder motion.  However, the Court notes that Ms. Barnett identified Maurer's "intermediate goals" regarding range of motion to be as follows:  (1) flexion 170-180 degrees; (2) abduction 170-180 degrees; and (3) external rotation at side 50 degrees.  (Tr. 423.) In addition, the Court notes that state agency consultative examiner James Gatton, M.D., appears to indicate in his consultative examination report that a normal range of shoulder motion for (1) flexion is 180 degrees; (2) abduction is 170 degrees; (3) external rotation is 60 degrees, and (4) internal rotation is 80 degrees.  (Tr. 355.)

On July 1, 2022, Maurer reported an increase in her bicep tendon pain, attributing it to carrying a laundry basket to and from the basement.  (Tr. 398.)  Ms. Barnett educated Maurer on her "1-2 lb. weight limit at this time."  (*Id*.)  Maurer presented for her last occupational therapy session on July 8, 2022.  (Tr. 395-397.)  She reported no pain and overall good range of motion, with her right shoulder flexion and abduction range of motion at 180 degrees, external rotation at 72 degrees, and internal rotation at 21 degrees. (Tr. 395-396.)  Ms. Barnett noted that Maurer tolerated the session well, with no increase in pain.  (Tr. 397.)  Ms. Barnett did note, however, that Maurer had increased fatigue as the session progressed and required short rest breaks between each exercise to manage muscle fatigue.  (*Id*.)

### 3.    Office Visits with Jordyn Hatcher, C.N.P. (May 2022 to June 2023)

Meanwhile, Maurer presented to certified nurse practitioner Jordyn Hatcher, C.N.P., between May 2022 and June 2023, for post-surgical follow-up.  On May 19, 2022 (i.e., fourteen days post-surgery), Maurer reported to Nurse Hatcher that she was "doing well overall."  (Tr. 415.)  Maurer denied any issues or concerns, stated that her pain was "decreasing day by day," and reported that she was happy with her progress. (Tr. 415-416.)  Nurse Hatcher directed Maurer to continue wearing a sling until her next follow up in four weeks.  (Tr. 416.)

Maurer returned to Nurse Hatcher on June 16, 2022.  (Tr. 404-405.)  Maurer again reported that she was doing well overall and denied any issues or concerns.  (*Id*.)  Nurse Hatcher found that Maurer was "progressing well ahead of schedule," but reinforced "no lifting" with her right arm.  (*Id*.)  Nurse Hatcher advised Maurer that she could transition out of the sling and instructed her to return in six weeks.  (*Id*.)

On September 15, 2022 (i.e., four months post-surgery), Maurer reported that her shoulder was "doing well overall" but stated that she continued to have occasional pain in her bicep area.  (Tr. 393.)  On examination, Nurse Hatcher found that Maurer's shoulder range of motion was normal (i.e.; "[Forward Flexion ("FF")]: 180/180; [Abduction ("ABD")]: 180/180; [External Rotation ("ER")]: 80/80.") (*Id*.)  She rated Maurer's supraspinatus strength as 4/5,[4] and noted that Maurer was "distally neurovascularly intact with 2+ radial pulses and full sensation in [right upper extremity] axillary nerve distribution."  (Tr. 393-394.)  Nurse Hatcher concluded as follows:

> At this time, [Maurer] is doing well. She is progressing well.  She will continue therapy exercises at home to work on strengthening.  We discussed no lifting more than a few pounds with the right upper extremity. We discussed that in regards to the size of rotator cuff tear she had, she is progressing very well. She will use tylenol as needed for pain. We discussed that it is common to still have pain at the lateral aspect of the arm as that is related to her rotator cuff healing and strengthening.  Follow up in 3 months for repeat evaluation Dr. Randall.  Call with any questions or concerns.

(Tr. 394.)

Maurer returned to Nurse Hatcher on December 15, 2022 (i.e., seven and a half months post-surgery).  (Tr. 386-387.)  Maurer reported that her shoulder was doing well, and denied any issues or concerns.  (*Id.*)  She stated that she had not been performing therapy exercises on a regular basis. (*Id.*)  Maurer's range of motion was slightly reduced ("FF: 150/170; ABD: 150/170; ER: 50/60") but her supraspinatus strength was slightly improved, at 4+/5.  (Tr. 386.)  Nurse Hatcher found that Maurer was "progressing well." (Tr. 387.)  She reviewed therapy exercises with Maurer to "work on range of motion and strengthening," and "discussed the continued limitations of no more than a

---

[4] The supraspinatus is a rotator cuff muscle located on the upper back/shoulder that originates on the scapula and attaches to the humerus. *See, e.g.,* www.ncbi.nlm.nih.gov/books/NBK537202/. According to social security regulations, on a grading system of 0 to 5, a strength score of 4 indicates "good" strength and a score of 5 indicates "normal" strength. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00(C)(2)(c)(Table 1).

couple pounds with body or above shoulder height due to the size of rotator cuff tear she had." (*Id.*) Nurse Hatcher advised Maurer to "continue restrictions at this time" and follow up in five months. (*Id.*)

Maurer returned for follow up on June 6, 2023 (i.e., thirteen months post-surgery). (Tr. 381-382.) She stated that her "shoulder is doing great," noting that she experienced "occasional weakness with the shoulder as well as soreness after work but is doing well overall." (Tr. 381.) Maurer denied "any issues or concerns for the right shoulder."[5] (*Id.*) On examination, Maurer's right shoulder range of motion was noted as "FF: 180/180; ABD: 180/180; ER:  80/80"; her supraspinatus strength was improved, at 5-/5; and she had full sensation. (Tr. 382.) Regarding Maurer's shoulder, Nurse Hatcher noted as follows:

> At this time, [Maurer's] right shoulder is doing very well. We did discuss that her strength may never fully improve as she was [sic] a massive rotator cuff tear prior to surgery. She voiced understanding. Continue to work on therapy exercises for endurance.  She may slowly advance as tolerated.  We did discuss that she should avoid any quick or jerking movements with the right arm.  She voiced understanding.

(*Id.*)

C.      **Opinion Evidence**

1.      **C.N.P.  Hatcher**

On November 17, 2022 (i.e., approximately six and a half months post-surgery), Nurse Hatcher completed a Residual Functional Capacity Questionnaire - Physical regarding Maurer's physical limitations.  (Tr. 351.)  Nurse Hatcher indicated a diagnosis of right shoulder rotator cuff

---

[5] Maurer did report, however, progressively worsening pain in her left knee. (Tr. 381.)  She reported that she had received an injection of the left knee in January 2022, which had provided relief for "approximately one year." (*Id.*)  The pain was now throughout her knee and interfering with her daily activities.  (*Id.*)  The record reflects Maurer received a left knee injection on June 6, 2023.  (Tr. 382, 383.)

repair.  (*Id.*)  She noted that Maurer had undergone surgical repair of her right shoulder on May 5, 2022, and indicated that the restrictions set forth in the Questionnaire (as set forth below) were "until May 5, 2023."  (*Id.*)

Nurse Hatcher opined that Maurer could (1) sit, stand, and walk for 6 hours continuously in an 8 hour workday; (2) lift or carry up to 5 pounds continuously for "up to 2 day[s] per week for 6 hours per shift;" and (3) frequently bend or squat.[6]  (*Id.*)  She further opined that Maurer could never lift or carry more than 11 pounds and could never crawl or climb.  (*Id.*)  Nurse Hatcher indicated that pain or other symptoms would occasionally interfere with Maurer's ability to maintain the attention and concentration needed to perform simple work tasks.  (*Id.*)  Lastly, Nurse Hatcher opined that Maurer would not be absent from work as a result of treatment or her impairments.  (*Id.*)  Nurse Hatcher did not include, in the RFC Questionnaire form, any narrative or other explanation regarding the bases for her opinions.

### 2.     Consultative Medical Examiner James Gatton, M.D.

On March 27, 2023, Maurer attended a consultative medical examination with state agency consultant James Gatton, M.D.  (Tr. 353-359.)  Dr. Gatton noted that Maurer reported having undergone right shoulder rotator cuff repair and that she was still experiencing "pain and difficulty lifting, reaching and carrying objects with the right arm."  (Tr. 358.)  Maurer also complained of bilateral knee pain.  (*Id.*)

On physical examination, Dr. Gatton noted that Maurer walked with a normal gait without the use of an assistive device, and was able to get on and off the examination table unassisted without

---

[6] The form defines the term "continuously" as "67-100% of the day" and the term "frequently" as "34-66% of the day." (*Id.*)

9

difficulty. (Tr. 358-359.) She was unable to hop or squat. (*Id*.) There was no clubbing, cyanosis or edema in Maurer's extremities, and her peripheral pulses were normal. (*Id*.) Dr. Gatton noted decreased strength of 4/5 in Maurer's right shoulder for flexion, extension, abduction, adduction, external rotation, and internal rotation. (Tr. 353.) He found Maurer's "range of motion examination is without limitation at cervical and lumbar spines as well as upper and lower extremities throughout." (Tr. 359.) Dr. Gatton then opined as follows:

> This claimant should be able to walk for four to five hours out of an eight-hour day. The claimant could probably be on their feet for a combined total of four to five hours out of an eight-hour day. The claimant probably could carry less than 10 pounds frequently and more than 20 pounds on occasion. Other limitations in function include lifting, carrying, pushing, and pulling with the right arm. Crawling, kneeling, crouching, climbing, stooping, and bending would also be difficult.

(*Id*.)

### 3. State Agency Non-Examining Physicians

#### a. Lawrence Landwehr, M.D.

On June 28, 2023, State agency reviewing physician Lawrence Landwehr, M.D., completed a physical residual functional capacity assessment. (Tr. 361-368.) Dr. Landwehr opined that Maurer was able to (1) lift and carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about 6 hours in an 8 hour workday; (3) sit for a total of about 6 hours in an 8 hour workday; (4) occasionally climb ramps, stairs, ladders, ropes, or scaffolds; (5) occasionally stoop, kneel, crouch, and crawl; and (6) frequently balance (*Id*.) He concluded that she was limited to frequent reaching in all directions (including overhead) due to decreased strength in her right shoulder. (Tr. 364.) Dr. Landwehr found that Maurer had an unlimited ability to push and/or pull. (Tr. 362.) Lastly, Dr. Landwehr noted that he found Nurse Hatcher's opinion to be only partially

persuasive on the grounds that "the severity of limitations opined [by Nurse Hatcher] are partially consistent with the totality of medical evidence in [the] file." (Tr. 367.)

### b. Gary Hinzman, M.D.

On July 1, 2023, state agency physician Gary Hinzman, M.D., reviewed Maurer's medical records and completed a Physical RFC Assessment. (Tr. 65-67.) Therein, Dr. Hinzman opined that Maurer was able to: (1) lift and carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about 6 hours in an 8 hour workday; (3) sit for a total of about 6 hours in an 8 hour workday; (4) occasionally climb ramps and stairs; and (5) occasionally balance, stoop, kneel, and crawl. (*Id*.) He further opined that Maurer could never climb ladders, ropes or scaffolds, and could never crouch (i.e., bend at the knees). (*Id*.) Due to Maurer's reduced (i.e., 4/5) right shoulder strength and knee osteoarthritis, Dr. Hinzman opined that she was limited to frequent push and/or pull in both her upper and lower extremities. (*Id*.) Lastly, Dr. Hinzman found that Maurer was limited to frequent reaching (both in front, laterally, and overhead) and handling with her right extremity. (*Id*.)

### c. Leon Hughes, M.D.

On October 8, 2023, state agency physician Leon Hughes, M.D., reviewed Maurer's medical records and completed a Physical RFC Assessment at the reconsideration level. (Tr. 74-76.) Dr. Hughes agreed with Dr. Hinzman's opinions in all respects. (*Id.*)

## III. The Hearing and the ALJ Decision

### A. Relevant Hearing Testimony

The ALJ conducted a telephonic hearing on April 8, 2024. (Tr. 32-60.) At the outset, Maurer's counsel requested that Maurer be permitted to amend her claim to a closed period of

11

disability, from April 28, 2022 (i.e., the date she stopped working before her right shoulder surgery) to May 5, 2023.  (Tr. 38-39.)  The ALJ took the request under advisement.

Maurer then testified that she graduated from high school, has a driver's license, is right handed, and lives in a house with her husband.  (Tr. 39-40.)  Regarding her work history, Maurer testified that she had worked as a bartender for more than twelve years.  (Tr. 41-43.)  In that position, she was "mostly on her feet" and lifted up to 50 pounds.  (*Id.*)  She testified that she stopped working on April 28, 2022 due to right shoulder pain and underwent right shoulder surgery on May 5, 2022.  (Tr. 38-39, 41.)  Maurer testified that she returned to work in November 2022, but on a reduced schedule and with restrictions.  (Tr. 41-42.)  Specifically, Maurer testified that, when she initially returned to work after her shoulder surgery, she only worked 6 hour shifts for 2 days a week, and it was "the easier shift, the lunch shift."  (*Id.*)  She also testified that she "wasn't allowed to lift anything over five pounds."  (Tr. 42.)

The ALJ asked Maurer to describe her symptoms and limitations during her requested closed period of disability, i.e., the approximately year-long period between April 28, 2022 and May 5, 2023. Maurer testified (in relevant part) as follows:

> Q:    ** I know that you had stopped working for about six/seven months and then went back to work, but what were you doing like on a typical day, like a non-workday?
>
> A:    I was babying my arm quite a bit because it was pretty painful after working the few days.  So, I mean, I just did mostly household chores and I babied my arm a lot because it was – the surgeon had said that my arm looked like an 80 year old man's, with a massive tear, a rotator cuff tear and bicep/tendon tear and I just had to be very careful with it, so.

(Tr. 45.)  She further testified that, right after the surgery, it was hard for her to get dressed in certain respects, such as pulling clothes over her head, etc.  (*Id.*)  Her ability to reach over her head improved

as she approached the year mark from her surgery but she still had problems reaching with her arm fully extended, particularly when doing so involved lifting or carrying anything "with any weight on it whatsoever."  (Tr. 45-46.)

Maurer estimated that, as of April/May 2023, she could probably only lift five pounds "depending on the extension of [her] arm."  (Tr. 47.)  She stated that she typically held her right arm closer to her body and often supported her right arm with her left hand.  (Tr. 46-47.)  Maurer did testify, however, that she had no problems with manipulation (such as ringing something into a computer, for example), explaining that "[i]f I didn't have to lift my arm at all, it would be fine."[7] (Tr. 47.)  Regarding household chores, she testified that (during the period between April 2022 and May 2023) she could not mow the grass and it was difficult for her to do outside work, such as gardening.  (Tr. 53.)  Maurer stated that she did not believe that, during that time period, she could have lifted ten pounds or reached in all directions with her right arm on a full time basis.  (Tr. 51-52.)

Maurer testified that, as of the date of the hearing (April 2024), she was still working 2 days per week, but was working 8 hour shifts (instead of 6 hour shifts).  (Tr. 48.)  She testified that she was not currently on any kind of pain medication, other than ibuprofen.  (Tr. 49.)  Maurer also stated that she was doing physical therapy at home and was "still trying to strengthen [her right] shoulder and arm."  (Tr. 51.)

The VE then testified that Maurer had past relevant work as a bartender, "SVP3, semi-skilled, physical demand level per DOT light, but performed as medium."  (Tr. 55.)  The ALJ posed the following hypothetical to the VE:

---

[7] Maurer also testified that she had some "knee issues" during the period between April 2022 and May 2023, particularly around November and December 2022.  (Tr. 48.)  However, she stated that she received cortisone injections, which "helped tremendously."  (*Id.*)

> Q:     *** Okay. Can you please assume a hypothetical individual of the same age, education and work experience as the Claimant that can perform light exertional work[8] with the following additional limitations.  This individual can frequently push and/or pull with the right upper extremity. They can frequently push and/or pull with the left lower extremity. They can occasionally climb ramps and stairs, occasional  balance as the term balance is defined in the SCO, occasionally stoop, occasionally kneel, occasionally crouch. They can never crawl, never climb ladders, ropes and scaffolds.  They can frequently reach with the dominant right upper extremity in all directions. They --  and there's no limitations in reaching with the left upper extremity. They can have no exposure to unprotected heights or moving mechanical parts and they can perform no commercial driving. Could such a hypothetical individual perform the Claimant's past work?

(Tr. 55-56.)  The VE testified that the hypothetical individual could perform Maurer's past work as a bartender as described in the Dictionary of Occupational Titles ("DOT"), but not as performed by Maurer.  (Tr. 56.)  The VE also testified that the hypothetical individual could perform other jobs in the national economy, including merchandise marker, routing clerk, and sales attendant.  (*Id*.)

For his second hypothetical, the ALJ asked the VE to assume a hypothetical individual with the same limitations identified in hypothetical one, except instead of frequently reaching with the right upper extremity this individual could only occasionally reach in all directions with the right upper extremity.  (*Id*.)  The VE testified that the reduction to occasional reaching eliminated the positions that she had presented in response to the first hypothetical.  (*Id*.)  The VE further testified that there would not be any jobs in the national economy that such an individual could perform with a restriction to occasional reaching.  (Tr. 56-57.)

---

[8] As discussed *infra*, social security regulations provide that light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

Lastly, for his third hypothetical, the ALJ asked the VE to "assume a hypothetical individual with the same limitations identified in hypothetical one, including the limitation to light work or at least the standing and walking and sitting limitations that go along with light work, but this individual can only lift and/or carry ten pounds occasionally and frequently." (Tr. 57.)  The VE testified that there would be no jobs in the national economy for such an individual. (*Id*.)

**B.     The ALJ Decision**

On April 24, 2024, the ALJ issued a decision, in which he found that Maurer is not disabled. (Tr. 17-27.)  At the outset, the ALJ denied Maurer's request for a closed period of disability from April 28, 2022 to May 5, 2023, and stated that he "will adjudicate the entire period from the alleged onset date through the date of decision." (Tr. 17.) The ALJ found that Maurer's bilateral knee osteoarthritis and right shoulder degenerative joint disease, status post arthroscopy constituted severe impairments. (Tr. 20.)  He further determined that these impairments did not (considered singly and in combination) meet or medically equal the criteria of a listed impairment under social security regulations. (Tr. 21.)

The ALJ then proceeded to assess Maurer's RFC.  The ALJ first discussed Maurer's subjective complaints, including her testimony that "[a]fter surgery, she had difficulties even dressing and could not lift her arms over her head for several months." (Tr. 22.)  The ALJ also noted Maurer's testimony that, a year after surgery, "she could reach overhead but could not lift any amount of weight over her head and could lift approximately five pounds overall." (*Id*.)  The ALJ then discussed Maurer's medical records relating to her shoulder surgery and post-surgical treatment. (Tr. 22-23.) In relevant part, the ALJ discussed Maurer's treatment and recovery after her surgery, as follows:

> Subsequent records document significant improvement following surgery and rehabilitation, establishing that within 12 months of onset (the durational period

15

required for disability), the claimant could perform the above-defined residual functional capacity. Specifically, as of May 19, 2022, she reported her pain was decreasing day-by-day. She reported doing well, with physical therapy going well (Exhibit 7F/47). Physical therapy records noted pain rated only 2/10 (Exhibit 7F/44), reduced to 1/10 as of June 2022 (Exhibit 7F/33). Orthopedic follow-up on September 15, 2022, noted she was doing well overall with pain only occasionally in the lateral arm. Range of motion was full with supraspinatus strength 4/5 (Exhibit 7F/25). She was advised to continue lifting no more than a few pounds with the right upper extremity. She was advised to use Tylenol for pain and continue exercises at home.

*** Follow-up on her shoulder [in December 2022] noted she was doing well. She denied performing physical therapy exercises on a regular basis. She was advised to lift no more than a couple pounds above shoulder height, and to perform exercises (Exhibit 7F/19).

*** Records in 2023 document stable findings. During a June 2023 orthopedic follow-up, only 13 months after onset and therefore likely reflective of her symptoms and limitations as of the durational period mark of 12 months, she stated her shoulder was "doing great;" she reported occasional weakness and soreness after work but that she was doing well overall. She denied any issues or concerns. *** Physical examination revealed full range of motion of the right shoulder, with 5-/5 supraspinatus strength and intact sensation. *** It was noted her shoulder was doing very well, and she could continue to slowly advance as tolerated. ***

In summary, while the claimant has a history of degenerative joint disease in both the left knee and right shoulder, treatment records document significant improvement with treatment. Treatment records document good results with her shoulder surgery, per the claimant's own reports, and examination findings. While imaging reveals significant knee osteoarthritis, the claimant appears to have good results with steroid injections, lasting approximately 5 months before returning pain. Furthermore, the claimant testified, and the record reflects she returned to work part time as a bartender (Exhibit 7F/3). However, given her well documented impairments, the claimant would reasonably have some limitations due to pain, weakness, and loss of range of motion. Accordingly, the objective findings of record; the claimant's own reports of significant improvement post-surgery; and her continuing activities, including her return to work activity as a bartender two-days a week in November 2022 and testimony that she could work more than those two days as of very shortly after 12-months after onset, together, establish that as of that 12-month mark, she could perform the above-defined range of light work.

(Tr. 22-24.)

The ALJ then discussed the medical opinions of Nurse Hatcher and Drs. Gatton, Landwehr, Hinzman and Hughes.  (Tr. 24-25.)  The ALJ found the opinions of Drs. Gatton, Hinzman and Hughes to be "partially persuasive" and the opinion of Dr. Landwehr to be "generally persuasive."  (*Id*.)  He evaluated Nurse Hatcher's opinion as follows:

> The opinions of Jordyn Hatcher, CNP, at Exhibit 3F are not persuasive. First, the undersigned notes the opinions were restricted until May 5, 2023, at the one-year mark of the claimant's surgery. However, they were offered in November 2022, without reference to the claimant's actual postsurgical recovery and abilities, which as discussed above, show significant recovery.  The opinion also does not include any significant supporting rationale, only noting the claimant's prior surgery. Finally, as discussed above, the severity of the lifting requirement, is not consistent with the claimant's reports or examinations near/around the one-year durational requirement after disability (see, e.g., Exhibits 5F, 7F). Opinions that the claimant could never climb are unsupported by any physical findings w [sic], as the only noted impairment was the claimant's shoulder.  Opinions that the claimant could lift only 5 pounds further ignore the claimant's ability to utilize his [sic] unimpaired left upper extremity. Lastly opinions that the claimant's symptoms would interfere with attention and concentration, are wholly unsupported, and inconsistent with the claimant's own recovery rating her pain as only 1-2/10 (Exhibit 7F).  Lastly opinions that the claimant could only work 2 days per week for 6 hours, for a year after her surgery is not supported by any objective findings, and again, is inconsistent with the claimant's own reports of her recovery post-surgery, as discussed above.

(Tr. 25.)  The ALJ then assessed the following RFC: "the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[9] except she can frequently push/pull with the right upper extremity; frequently push/pull with the left lower extremity; occasionally climb ramps/stairs, balance (as defined in the SCO), stoop, kneel, crouch; Never crawl; Never climb

---

[9] The regulations define "light work" (in relevant part) as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

17

ladders/ropes/scaffolds; Frequently reach with the dominant right upper extremity; No exposure to unprotected heights, moving mechanical parts; No commercial driving." (Tr. 21.)

Based on the testimony of the VE at the hearing, the ALJ concluded that Maurer was capable of performing her past relevant work as a bartender, as generally performed in the national economy. (Tr. 26.)  Alternatively, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Maurer could perform, including the representative jobs of merchandise marker, routing clerk, and sales attendant.  (Tr. 26-27.)  Thus, the ALJ found that Maurer is not disabled under social security regulations.  (Tr. 27)  On January 8, 2025, the Appeals Council declined to review the ALJ's decision (Tr. 1-6), making the ALJ's decision the Commissioner's final decision.

## IV.    The Report & Recommendation (Doc. No. 12)

In her opening Brief on the Merits, Maurer argued that the ALJ erred in his evaluation of Nurse Hatcher's November 2022 opinion.  (Doc. No. 8.)  She maintained that, while the ALJ provided multiple reasons for discounting Nurse Hatcher's opinion, "most of the reasons are conclusory and not tied to the record."  (*Id*. at PageID# 642.)  Specifically, Maurer argued that the ALJ failed to sufficiently consider the supportability of Nurse Hatcher's opinion, arguing that the ALJ "omitted critical facts" contained in Nurse Hatcher's treatment notes, such as (1) the severity of Maurer's rotator cuff tear; (2) the imposition of strict lifting restrictions due to the severity of that tear; and (3) findings that Maurer experienced increased pain when she exceeded those lifting restrictions.  (*Id*. at PageID# 644.)  Maurer further argued that the ALJ failed to account for consistent examination findings of decreased strength in her right shoulder.  (*Id*.)  Lastly, Maurer argued that the ALJ failed to provide any meaningful analysis regarding the consistency of Nurse Hatcher's opinions with other evidence in the record, including Dr. Gatton's consultative examination on March 27, 2023.  (*Id*. at

PageID# 649.)  The Commissioner opposed Maurer's Brief, arguing that the ALJ properly considered the supportability and consistency of Nurse Hatcher's opinions and, further, that his conclusion that Nurse Hatcher's opinion was not persuasive is supported by substantial evidence.  (Doc. No. 10.)

The Magistrate Judge agreed with the Commissioner, finding that "the ALJ expressly stated why he found CNP Hatcher's opinions unsupported and inconsistent with evidence in the record." (Doc. No. 12 at PageID# 684.)  Regarding supportability, the Magistrate Judge found that the ALJ articulated several reasons why Nurse Hatcher's opinion was not supported by the record, including that (1) Nurse Hatcher failed to include any explanation for her proposed limitations in her November 2022 opinion itself; and (2) Nurse Hatcher's own treatment notes demonstrated significant post-surgical recovery.  (*Id*. at PageID# 685.)  Regarding consistency, the Magistrate Judge "noted that CNP Hatcher's opinion about lifting limitations was inconsistent with Maurer's own reports and examinations around the required one-year durational requirements," including Dr. Gatton's consultative examination and Ms. Barnett's occupational therapy notes.  (*Id*.)

Accordingly, the Magistrate Judge recommended that the Commissioner's decision be affirmed because the ALJ properly articulated how he considered Nurse Hatcher's medical opinion and "built a logical bridge supported by substantial evidence that allows this Court to follow his reasoning."  (*Id*. at PageID# 686.)

## V. Standards of Review

### A. Review of Objections to R&R

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926

at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (citations omitted); *Orr v. Kelly*, 2015 WL 5316216 at *2 (N.D. Ohio Sept. 11, 2015) (citing *Powell,* 1994 WL 532926 at *1).  *See also* Fed. R. Civ. P. 72(b)(3). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. §636(b)(1).

The Sixth Circuit has held that general objections to a Magistrate Judge's report and recommendation are insufficient.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).  *See also Brown v. City of Grand Rapids, Michigan*, 2017 WL 4712064 (6th Cir. 2017).  "A general objection, or one that merely restates the arguments previously presented, is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock,* 327 F.Supp.2d 743, 747 (E.D. Mich. 2004).  Rather, "[t]he objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."  *Miller,* 50 F.3d at 380 (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508–09 (6th Cir. 1991)).  "'[B]are disagreement with the conclusions reached by the Magistrate Judge, without any effort to identify any specific errors in the Magistrate Judge's analysis that, if corrected, might warrant a different outcome, is tantamount to an outright failure to lodge objections to the R&R.'"  *Arroyo v. Comm'r of Soc. Sec.*, 2016 WL 424939 at *3 (E.D. Mich. Feb. 4, 2016) (quoting *Depweg v. Comm'r of Soc. Sec.*, 2015 WL 5014361 at *1 (E.D. Mich. Aug. 24, 2015)) (citing *Howard,* 932 F.2d at 509).

Moreover, parties cannot "raise at the district court stage new arguments or issues that were not presented" before the magistrate judge's final report and recommendation.  *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("Courts have held that while the Magistrate Judge Act,

28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate.")  *See also Swain v. Comm'r of Soc. Sec.*, 379 Fed. Appx 512, 517-18 (6th Cir. 2010) ("A claim raised for the first time in objections to a magistrate judge's report is deemed waived."); *Nasser v. Comm'r of Soc. Sec.,* 598 F.Supp.3d 614, 621 (E.D. Mich. 2022), *aff'd,* 2022 WL 17348838 (6th Cir. Dec. 1, 2022).

### B.      Review of Social Security Decisions

Under the Social Security Act, a disability renders the claimant unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can result in death or that can last at least twelve months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual lives or in several regions of the country.  42 U.S.C. § 423(d)(2)(A).  Consideration of disability claims follows a five-step review process.[10] 20 C.F.R. § 404.1520.

---

[10] Under this five step review, the claimant must first demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d).  Before considering step four, the ALJ must determine the claimant's residual functional capacity; i.e., the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 416.930(e).  At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).  *See Abbot*, 905 F.2d at 923.

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. Appx. 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)).

If substantial evidence supports the Commissioner's finding that the claimant is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently.  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted).  A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). Moreover, the Commissioner's decision must be affirmed even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

## VI.     Plaintiff's Objection to the R&R

In her Objection, Maurer argues that the Magistrate Judge erred in concluding that the ALJ properly evaluated Nurse Hatcher's November 2022 opinion.  (Doc. No. 13.)  She maintains that remand is required because the ALJ failed to (1) cite evidence supporting his finding that Nurse Hatcher's opinion is unpersuasive; (2) identify evidence inconsistent with CNP Hatcher's opinion; (3) identify evidence showing improvement prior to May 5, 2023; and/or (4) "evaluate the evidence within the treatment notes of CNP Hatcher and other examiners consistent with ongoing and greater

limitations prior to May 5, 2023." (*Id*. at PageID# 690.) Maurer asserts that "Judge Sheperd's recommendation that the ALJ did not err is unsupported by the factual record and inconsistent with the requirements of the revised regulations." (*Id*.) The Commissioner disagrees, arguing that the Magistrate Judge properly found that the ALJ applied the correct legal standards when evaluating Nurse Hatcher's opinion. (Doc. No. 14.)

Under the social security regulations, an ALJ is not to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). *See, e.g., Adams v. Comm'r*, 2023 WL 6366106 at * 2 (6th Cir. Sept. 28, 2023). But the ALJ must articulate how "persuasive" he finds "all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." 20 C.F.R. § 404.1520c(b). In evaluating the persuasiveness of a medical opinion, an ALJ is directed to consider several factors: the opinion's supportability and consistency; the treating source's relationship with the claimant and specialization; and other factors, such as the medical source's familiarity with other evidence relevant to the claim. 20 C.F.R. § 404.1520c(c). Supportability and consistency are "the most important factors," and the ALJ must explain his consideration of them; the ALJ may, but is not required to, explain how he considered the other factors. 20 C.F.R. § 404.1520c(b)(2). *See Adams*, 2023 WL 6366106 at * 2.

As to supportability, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In other words, "supportability" is the extent to which a medical source's *own* objective findings and supporting

explanations substantiate or support the findings in the opinion. *See Murray v. Bisignano*, 2025 WL 2249590 at * 8 (N.D. Ohio Aug. 7, 2025).

As to consistency, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Thus, "consistency" is the extent to which a medical source's opinion findings are consistent with the evidence from *other* medical and nonmedical sources in the record. *See Murray*, 2025 WL 2249590 at *8.

Here, Maurer argues that the ALJ's findings regarding both the supportability and consistency of Nurse Hatcher's November 2022 opinion are not supported by substantial evidence. The Court will address each of these factors separately, below.

A.      **Supportability**

Maurer first argues that "the ALJ's findings under the supportability factor are unsupported by substantial evidence because the evidence cited does not factually support the ALJ's conclusions and the ALJ failed to address the supportive evidence in the treatments anywhere in the decision." (Doc. No. 13 at PageID# 691.) She maintains that "the ALJ made conclusory findings that the limitations were unsupported by objective findings but failed to discuss the positive objective findings during the closed period of alleged disability anywhere in the decision." (*Id*.) In particular, Maurer asserts that the ALJ failed to acknowledge or evaluate the following information in Nurse Hatcher's treatment notes: (1) repeated instructions that Maurer lift no more than a few pounds with her right upper extremity; (2) statements that these lifting restrictions were imposed due to the size of Maurer's rotator cuff tear; and (3) abnormal objective findings, including decreased strength and limited range

24

of motion.  (*Id*. at PageID# 694.)  Maurer argues that, by failing to evaluate evidence in Nurse Hatcher's treatment notes that supported her November 2022 opinion, the ALJ "failed to acknowledge or resolve the conflict between the record and his findings," necessitating a remand. (*Id*. at PageID# 692.)

For the following reasons, the Court finds Maurer's Objection to be without merit.  As an initial matter, the Court rejects Maurer's argument that the ALJ failed to acknowledge Nurse Hatcher's lifting restrictions and/or her positive objective examination findings "anywhere in the decision." (Doc. No. 13 at PageID# 691.)  To the contrary, and as set forth *supra*, the ALJ expressly referenced this evidence when he discussed Maurer's treatment records at step four.  Specifically, the ALJ discussed the medical evidence regarding Maurer's right shoulder MRI; her April 5, 2022 right rotator cuff surgery; and her post-surgical therapy and treatment records, including Nurse Hatcher's treatment records.  (Tr. 22-23.)  In so doing, the ALJ expressly noted that Maurer's right shoulder MRI showed a "full thickness rotator cuff tear, bicep tendinitis, acromioclavicular joint arthritis, and signs of shoulder impingement." (Tr. 22.)  The ALJ then discussed Maurer's post-surgical treatment, including her May 19, 2022 visit with Nurse Hatcher.  (*Id*.) (citing Exhibit 7F/47, i.e., Tr. 415-416.) In discussing this treatment note, the ALJ accurately noted that Maurer reported that her pain was "decreasing day by day" and that she was "doing well." (*Id*.)  The ALJ then expressly discussed Maurer's September 15, 2022 visit with Nurse Hatcher, noting that: "Orthopedic follow-up on September 15, 2022, noted [Maurer] was doing well overall with **pain only occasionally in the lateral arm**.  Range of motion was full with **supraspinatus strength 4/5** (Exhibit 7F/25).  **She was advised to continue lifting no more than a few pounds with the right upper extremity**.  She was

advised to use Tylenol for pain and continue exercises at home. " (Tr. 22-23) (citing Exhibit 7F/25, i.e., Tr. 393-394) (emphasis added).

The ALJ then proceeded to discuss Maurer's December 15, 2022 visit with Nurse Hatcher. (Tr. 23) (citing Exhibit 7F/19, i.e. Tr. 386-387.) The ALJ accurately noted that Nurse Hatcher reported that Maurer was doing well and, further, that she had advised Maurer "**to lift no more than a couple pounds above her shoulder height** and to perform exercises." (*Id.*) (emphasis added). Lastly, the ALJ next discussed Maurer's June 6, 2023 visit with Nurse Hatcher, indicating that "it was noted [that Maurer's] shoulder was doing very well and she could continue to slowly advance as tolerated." (Tr. 23) (citing Exhibit 7F/14, i.e., Tr. 382.) Notably, on that date, Maurer's physical examination findings reflected normal range of motion in her right upper extremity and nearly normal 5-/5 strength. (Tr. 382.)

Thus, the ALJ did, in fact, acknowledge and discuss Nurse Hatcher's treatment notes indicating that, after her surgery, Maurer continued to feel occasional pain in her right upper extremity, occasionally exhibited decreased strength, and was restricted to lifting no more than a few (or "couple") pounds. (Tr. 22-23.) While the ALJ did not repeat all of this information again in the specific paragraph of his decision evaluating Nurse Hatcher's November 2022 opinion, he was not required to do so. As the Sixth Circuit has explained, an ALJ is permitted to rely on previously articulated information to support his analysis of opinion evidence. *See, e.g., Crum v. Comm'r of Soc. Sec.*, 660 Fed. Appx. 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion"). *See also McCarty v. Comm'r of Soc. Sec.*, 2024 WL 4695900 at * 8 (N.D. Ohio Nov. 6, 2024) (noting that "the ALJ's

26

decision must be read as a whole and with common sense”); *Bryant v. Comm'r of Soc. Sec.*, 2019 WL 5684456 at *10 (N.D. Ohio Nov. 1, 2019) (“Although the ALJ must discuss significant evidence supporting her decision and explain her conclusions with sufficient detail to permit meaningful review, there is no requirement that the ALJ incorporate all the information upon which she relied into a single paragraph.”).

With this in mind, and reading the ALJ decision herein as a whole, the Court finds that substantial evidence supports the ALJ’s discussion of the supportability of Nurse Hatcher’s November 2022 opinion.  In finding that Nurse Hatcher’s opinion was “not persuasive,” the ALJ referenced his previous discussion of the medical records (including Nurse Hatcher’s treatment notes) and found that “the severity of the lifting requirement is not consistent with the claimant’s reports or examinations near/around the one-year durational requirement after disability.”  (Tr. 25) (citing, in part, Exhibit 7F). Thus, while the ALJ had previously acknowledged Nurse Hatcher’s weight restrictions and some of the abnormal examination findings in her treatment notes, the ALJ explained that the restrictive lifting restrictions in Nurse Hatcher’s November 2022 opinion were ultimately not persuasive because they were inconsistent with (among other things) Nurse Hatcher’s own treatment records near or around the one year durational requirement (i.e., near or around May 2023.)  (*Id.*)

The Court finds the ALJ’s reasoning is supported by substantial evidence.  As discussed above, Nurse Hatcher’s December 15, 2022 treatment note showed good (i.e., 4+/5) strength and only slightly reduced range of motion in Maurer’s right shoulder.  (Tr. 386.)  And Nurse Hatcher’s June 2023 treatment note included physical examination findings of normal range of motion, nearly normal (5-/5) strength, and full sensation.  (Tr. 382.)  Moreover, in these treatment notes, Nurse Hatcher

found that Maurer was either "doing well" or "doing very well" with respect to her right shoulder recovery. (Tr. 387, 382.)

The Court further notes that the ALJ provided several other reasons why he found Nurse Hatcher's opinion was not supportable and, therefore, not persuasive. For example, the ALJ noted that, although Nurse Hatcher authored her opinion in November 2022, she extended her restrictions to May 5, 2023, "without reference to [Maurer's] actual postsurgical recovery and abilities, which as discussed above, show significant recovery." (Tr. 25.) The ALJ also commented that Nurse Hatcher had failed to include in her opinion "any significant supporting rationale, only noting the claimant's prior surgery." (*Id*.) The ALJ then noted that Nurse Hatcher's opinion that Maurer could never climb was "unsupported by any physical findings" and that her opinion that Maurer "could lift only 5 pounds further ignore [her] ability to utilize [her] left upper extremity." (*Id*.) Maurer does not sufficiently acknowledge, address, or explain how or why any of these reasons offered by the ALJ are not supported by substantial evidence. And, upon careful review of the record (as discussed above), the Court finds that they are.

Accordingly, and for all the reasons discussed above, the Court finds the ALJ's evaluation of the supportability of Nurse Hatcher's November 2022 opinion is supported by substantial evidence. Maurer's arguments to the contrary are without merit and rejected.

### B. Consistency

Maurer next argues that the ALJ's findings regarding the consistency factor are unsupported by substantial evidence because they are "factually unsupported and the ALJ failed to identify an inconsistency between CNP Hatcher's opinion and the remaining record." (Doc. No. 13 at PageID# 699.) She maintains that neither the Magistrate Judge nor the ALJ adequately acknowledged or

addressed (1) Ms. Barnett's findings that Maurer reported increased pain when failing to comply with lifting restrictions; or (2) Dr. Gatton's abnormal physical examination findings of reduced (4/5) shoulder strength.  (*Id*. at PageID#s 699-700.)  Maurer argues that the ALJ failed to sufficiently articulate why Nurse Hatcher's November 2022 opinion was not consistent with these records and examination findings.  (*Id*.)  Lastly, Maurer notes that the ALJ found Dr. Gatton's opinion to be only "partially persuasive" and, therefore, it cannot have served as evidence supporting an inconsistency in the record.  (*Id*.)

The Court finds Maurer's arguments to be without merit.  The ALJ expressly addressed the consistency of Nurse Hatcher's November 2022 opinion and offered several reasons in support of his conclusion that it was not consistent with other evidence in the record. (Tr. 25.)  First, the ALJ noted that Nurse Hatcher's opinions regarding Maurer's lifting restrictions and ability to work only 2 days per week for 6 hours, were not consistent with Maurer's own reports near and around the one year durational mark of May 2023.  (*Id*.)  The Court finds this reason to be supported by substantial evidence.  As discussed at length above, during her occupational therapy visits with Ms. Barnett, Maurer consistently rated her pain as only 1 or 2 on a scale of 10.  *See, e.g.,* Tr. 417, 412, 409, 406, 401.  Indeed, during her last occupational therapy session on July 8, 2022, Maurer reported no pain and exhibited normal range of shoulder flexion and abduction motion.  (Tr. 395.)  Likewise, Maurer consistently reported that she was "doing well" in her visits with Nurse Hatcher, stating in June 2023 that her shoulder was "doing great."  (Tr. 381, 386, 393, 404.)

The ALJ also explained that he found Nurse Hatcher's opinions regarding Maurer's lifting restrictions and ability to work only 2 days per week for 6 hours, were not consistent with objective findings in the record, including those contained in Ms. Barnett's occupational therapy notes and Dr.

Gatton's March 27, 2023 consultative examination report.  (Tr. 25.)  The Court recognizes (and, indeed, the ALJ himself acknowledged) that there are some abnormal physical examination findings in the record.  However, reviewing the record as a whole, the Court finds that the ALJ's reasoning on this issue is supported by substantial evidence.

While Maurer initially exhibited reduced range of shoulder motion and decreased strength, the record shows that she demonstrated continued progress in both areas over the course of her occupational therapy and treatment.  For example, by the end of May 2022, Maurer had increased her shoulder flexion range of motion from 50 degrees to 143 degrees.  (Tr. 421, 409.)  By the end of June 2022, Maurer showed normal shoulder flexion and abduction ranges of motion of 180 degrees.  (Tr. 401.)  And, at her last occupational therapy session on July 8, 2022, Maurer again showed normal shoulder flexion and abduction ranges of motion of 180 degrees.  (Tr. 395.)  These range of motion findings are consistent with Dr. Gatton's March 27, 2023 consultative examination report, which also documented "no limitation" in Maurer's right shoulder range of motion, with respect to either flexion, extension, abduction, adduction, external rotation, and/or internal rotation.  (Tr. 355.)

Regarding Maurer's shoulder strength, Dr. Gatton's report shows that (as of March 27, 2023) Maurer exhibited 4/5 strength in terms of her right shoulder flexion, extension, abduction, adduction, external rotation, and internal rotation.  (Tr. 353.)  According to Dr. Gatton's report, a rating of 4 indicates "strength reduced, but contraction can still move joint against resistance."  (*Id*.)  As noted *supra*, however, by June 2023, Maurer exhibited improved shoulder strength that was rated by Nurse Hatcher as 5-/5, i.e., nearly normal.  (Tr. 382.)

Based on the above, the Court finds that the ALJ's conclusion that Nurse Hatcher's November 2022 opinion is not consistent with other evidence in the record is supported by substantial evidence

30

in the record. While Maurer cites some abnormal objective findings, as well as evidence that she occasionally complained of pain when exceeding her lifting restrictions, the Court finds that she has failed to demonstrate that the ALJ's conclusion is not supported by substantial evidence. "The substantial evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Here, for all the reasons set forth above, the Court finds that substantial evidence in the record supports the ALJ's conclusion that Nurse Hatcher's November 2022 opinion is not supported by, or consistent with, other evidence in the record. Accordingly, Maurer's Objection is overruled. The Court agrees with Magistrate Judge that the Commissioner's decision should be affirmed.

## V.      Conclusion

For all of the foregoing reasons, Plaintiff's Objection (Doc. No. 13) is overruled. The Court adopts the Magistrate Judge's Report and Recommendation (Doc. No. 12) as set forth herein, and the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**


                                                          *s/Pamela A. Barker*
                                                          PAMELA A. BARKER
Date:  March 3, 2026                                      U. S. DISTRICT JUDGE


31